UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| STEVEN LOUIS BARNES, # 327117, ) | Civil Action No.: 4:08-cv-2197-MBS-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| SERGEANT E. QUATTLEBAUM, ) | |
| MAJOR JACKSON, SOUTH CAROLINA ) | |
| DEPARTMENT OF CORRECTIONS, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**I.     INTRODUCTION**

Plaintiff, who is proceeding pro se, is an inmate currently incarcerated within the South Carolina Department of Corrections (SCDC). He is presently housed at Lieber Correctional Institution (Leiber). The Plaintiff arrived at Kirkland Reception & Evaluation Center (Kirkland) on March 14, 2008, in order to be processed into SCDC from the Edgefield County Detention Center. Defendant Quattlebaum is a Sergeant at Kirkland and Defendant Jackson is a Major at Kirkland. Plaintiff raises a variety of constitutional claims under 42 U.S.C. § 1983.

Presently before the Court is Plaintiff's Motion for Preliminary Injunction (Document # 39) and Defendants' Motion for Summary Judgment (Document # 40). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion for Summary Judgment could result in the dismissal of his claims. Plaintiff has not responded to the Motion for Summary Judgment.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this

motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II.     PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

In this motion, Plaintiff requests that the Court order the SCDC to provide him with legal photocopies and legal supplies.

"An injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action." Bloodgood v. Garranghty, 783 F.2d 470 (4th Cir.1986). "Injunction issues to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." Connecticut v. Massachusetts, 282 U.S. 660, 674, 51 S.Ct. 286, 75 L.Ed. 602 (1931). "[B]are allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur. The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." Wisconsin Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C.Cir.1985).

To issue a preliminary injunction, this Court must consider the following four factors: (1) the likelihood of irreparable harm to the plaintiff if the court denies the preliminary injunction; (2) the likelihood of harm to the defendants if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits of his underlying claim; and (4) the public interest. Blackwelder Furniture Co. v. Sielig Manuf. Co., 550 F.2d 189, 196 (4th Cir.1977). Preliminary relief directed to running a state prison should be granted only in compelling circumstances. Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir.1994).

Here, Plaintiff has not shown that he is currently subject to any real or immediate threat of

harm. Plaintiff asserts in his Motion that failure to grant the requested relief "would lead to the petitioner missing specified court dates and or would lead to an inability of petitioner making timely filing to this court. The petitioner's assertion of this matter is not speculative nor hypothetical."

A review of the docket in this case reveals that Plaintiff has made numerous filings, including three Motions, a "Judicial Notice," a Letter, a Reply and a Notice of Appeal, since filing the present Motion for Preliminary Injunction (which is five, typewritten pages) indicating that he does not have access to paper, envelopes, pencils or photocopies. Yet, Plaintiff has failed to file a Response to Defendants' Motion for Summary Judgment, discussed below, which was filed before any of the above-referenced filings. Clearly, any harm Plaintiff might suffer for missing a deadline in this case would not result from a lack of paper, pencils, or envelopes as Plaintiff has evidenced through his numerous filings that he does indeed have access to those supplies.

Furthermore, the harm that would be suffered by Defendants would be great. As noted by the Fourth Circuit in Taylor v. Freeman, 34 F.3d 266, 268 (4th Cir.1994):

> [I]t is well established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities. As the District of Columbia Circuit observed in Inmates of Occoquan v. Barry, 844 F.2d 828 (D.C.Cir.1988), "in carrying out their remedial task, courts are not to be in the business of running prisons. The cases made it plain that questions of prison administration are to be left to the discretion of prison administrators." Id. at 841; see also Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 200, 69 L.Ed.2d (1981) ("[C]onsiderations [of appropriate prison management] properly are weighed by the legislature and prison administration rather than a court."); Bell v. Wolfish, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979) (disapproving trend of courts becoming "increasingly enmeshed in the minutiae of prison operations"); Turner v. Safley, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259-60, 96 L.Ed.2d 64 (1987).

Plaintiff also fails to show a likelihood of success on the merits, as required in Blackwelder. Thus,

Plaintiff's Motion for Preliminary Injunction should be denied.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Plaintiff's Allegations

Plaintiff alleges that Kirkland Reception & Evaluation Center (Kirkland) is a breeding ground for the staph infection because non-infected inmates are placed in the same cells as the infected inmates. Plaintiff asked to be and was put in lockdown to get away from the staph infection. He alleges he was later taken off lockdown and exposed to the staph infection for retaliatory reasons.

He also alleges that Defendants informed him that he could only have one of his nine boxes of legal materials at Kirkland and they sifted through the boxes and randomly chose which materials he could keep. They gave Plaintiff the option of either throwing away or sending home his remaining boxes of legal materials. He also asserts that the law library is not up to date. Plaintiff asserts that he has been hindered in his "non-frivolous" suits in Georgia and South Carolina federal and state courts.

He further alleges that Major Jackson asked him whether he wanted to be transferred to Lieber or Lee Correctional Institution, which he alleges are level three yards, and Plaintiff's sentence entitles him to a lower level yard. Plaintiff asserts that Major Jackson sent him to Lieber for retaliatory reasons.

#### B. Standard of Review

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any

cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any."

Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### C. Discussion

#### 1. 42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

#### 2. Failure to Exhaust Administrative Remedies

Defendants assert that Plaintiff has failed to exhaust his administrative remedies on any of the issues raised in his Complaint prior to filing this action.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a § 1983 action concerning conditions of his confinement. 42 U.S.C.§ 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison,

or other correctional facility until such administrative remedies as are available are exhausted." Id. Accordingly, before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001) (exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir.2001) (exhaustion required even though plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

Ann Hallman, who is the Inmate Grievance Coordinator for the Inmate Grievance Branch, submits an Affidavit regarding Plaintiff's grievance history. Hallman Aff. at ¶ 1. The record reveals that Plaintiff never filed a grievance alleging that the Defendants Jackson and Quattlebaum conspired to change the Plaintiff's classification or have him transferred to a high security or level 3 institution. Thus, such a claim is not properly before the Court.

In addition, although Plaintiff did file a grievance regarding his nine boxes of legal materials on June 26, 2008, see Grievance Number KCI-1252-08 (attached as Ex. A to Hallman Aff.)[1], it was

---

[1] This grievance was initially filed at Lieber as Grievance Number LCI-0855-08 and was reassigned as Grievance Number KCI-1252-08 because the grievance applied to events occurring at Kirkland.

filed after Plaintiff filed the present action on June 12, 2008. Thus, that claim is not properly before this court either.

Finally, Plaintiff also filed a grievance raising his fears of a staph infection. See Grievance Number KCI-0736-08 (attached as Ex. A to Hallman Aff.). However, this grievance was submitted by Plaintiff on April 6, 2008, and received by the Kirkland Grievance Office on April 11, 2008. Hallman Aff. ¶ 3. Warden Bernard McKie denied that grievance on July 9, 2008. Hallman Aff. at Ex. A. For the reasons set forth below, Plaintiff has failed to exhaust his administrative remedies with respect to this claim, as well.

In order to exhaust the SCDC administrative remedy[2], an inmate must fill out a Form 10-5 (Step 1 Grievance form) about the matters raised in his grievance and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The grievance coordinator has nine (9) days from the time the grievance is presented by the inmate to put it into SCDC's automated system. Once the grievance is properly entered into the SCDC automated system, the Warden should then respond to the Step 1 grievance in writing within forty (40) days. If the inmate is not satisfied with the Warden's response, then, within five (5) days, he or she must file an appeal of the Step 1 grievance response by filing a Form 10-5a (Step 2 Appeal) to the Responsible Official with the Inmate Grievance Coordinator. A responsible SCDC official will then have sixty (60) days to respond to the Step 2 grievance. The decision of the "responsible official" who answers Step 2 is the Department's final response in the

---

[2]In orders filed on May 9, 1996, this court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the standards required by 42 U.S.C. § 1997e(a)(2). See Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996).

matter.

Even if SCDC fails to respond to the plaintiff's Step 1 grievance and, as a result, leaves the plaintiff with no decision to appeal to Step 2, the plaintiff must still refrain from filing suit in federal court until all time periods for both steps to be completed have expired. Once the full period for prison responses has run without the issuance of any response, it is generally held that the inmate has substantially complied with the § 1997e exhaustion requirement. See, e.g., Boyd v. Corrections Corp. of America, 380 F.3d 989, 996, (6th Cir.2004) ("Following the lead of the ... other Circuits that have considered this issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002) ("agree[ing with other circuits] that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable"); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir.2002) (stating that prison's failure timely to respond renders administrative remedies unavailable); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir.2001) (holding that defendants failed to prove non-exhaustion where they presented no evidence to refute plaintiff's contention that he could not pursue grievance further after warden did not respond to his grievance); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir.1998) (holding that "available administrative remedies are exhausted when the time limits for the prison's response set forth in the prison Grievance Procedures have expired").

Under such Circumstances, an inmate of the South Carolina Department of Corrections who files a Step 1 grievance but receives no response thereto must wait at least 114 days (approximately four (4) months) from the time he or she files a Step 1 grievance before it may be said that he or she has exhausted "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Plaintiff failed

to wait 114 days following the filing of his grievance regarding his concerns about the staph infection before filing the present action. Thus, Plaintiff has failed to properly exhaust his administrative remedies and this claim is not properly before this court.

In sum, Plaintiff has failed to exhaust his administrative remedies as to any of the claims raised in his Complaint. Thus, it is recommended that summary judgment be granted and this case be dismissed without prejudice.

In the alternative, it is recommended that summary judgment be granted on the merits.

### 3. "Persons" Under 42 U.S.C. § 1983

Defendant SCDC argues that it is not a "person" under § 1983. Likewise, the other named Defendants argue that in their official capacities they are not "persons" under § 1983. In <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989), the United States Supreme Court stated that a suit brought against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Suits against officials in their official capacity are simply another way of pleading an action against the entity for which the official is an agent. <u>Id.</u> Additionally, states and state agencies are not "persons" as defined by 42 U.S.C. §1983 and therefore are not subject to suit under section 1983. <u>Id.</u> Therefore, Plaintiff's claims are barred against the SCDC and against the other Defendants in their official capacities.

### 4. Eleventh Amendment Immunity

Defendants contend that Plaintiff's § 1983 claims against them for money damages are barred pursuant to their Eleventh Amendment Immunity.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact,

to wait 114 days following the filing of his grievance regarding his concerns about the staph infection before filing the present action. Thus, Plaintiff has failed to properly exhaust his administrative remedies and this claim is not properly before this court.

In sum, Plaintiff has failed to exhaust his administrative remedies as to any of the claims raised in his Complaint. Thus, it is recommended that summary judgment be granted and this case be dismissed without prejudice.

In the alternative, it is recommended that summary judgment be granted on the merits.

### 3. "Persons" Under 42 U.S.C. § 1983

Defendant SCDC argues that it is not a "person" under § 1983. Likewise, the other named Defendants argue that in their official capacities they are not "persons" under § 1983. In <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989), the United States Supreme Court stated that a suit brought against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Suits against officials in their official capacity are simply another way of pleading an action against the entity for which the official is an agent. <u>Id.</u> Additionally, states and state agencies are not "persons" as defined by 42 U.S.C. §1983 and therefore are not subject to suit under section 1983. <u>Id.</u> Therefore, Plaintiff's claims are barred against the SCDC and against the other Defendants in their official capacities.

### 4. Eleventh Amendment Immunity

Defendants contend that Plaintiff's § 1983 claims against them for money damages are barred pursuant to their Eleventh Amendment Immunity.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact,

the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendant SCDC is entitled to Eleventh Amendment Immunity and the other Defendants in their official capacities are employees of the SCDC and, therefore, are also entitled to Eleventh Amendment immunity from monetary damages.

### 5. Access to Courts

Plaintiff appears to allege that he has been denied access to the courts because he was allowed to keep only one box of legal materials upon his admission to the SCDC. Plaintiff was allowed to mail out the excess boxes, and based on the evidence in the record, it appears that those other boxes

of legal materials were mailed to his emergency contact address. Jackson Aff. ¶ 39; Hallman Aff. at Ex. C.

The critical issue that must be analyzed to resolve the claims in this case is whether or not the plaintiff has been denied meaningful access to courts and is able to show actual injury as a result of the denial alleged. Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts. Pink v. Lester, 52 F.3d 73 (4th Cir.1995) ("negligent denial of access to the courts is not actionable under § 1983.") A prisoner must allege adverse consequence as a basis for allegations that the defendant's actions deprived him of meaningful access to the courts. White v. White, 886 F.2d 721 (4th Cir.1989); Morgan v. Montanye, 516 F.2d 1367 (2d Cir.1975) cert. denied, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Plaintiff alleges that he has cases that have been hindered because of his lack of access to his nine boxes of legal materials. However, he fails to set forth evidence of any specific injuries. The complaint does not describe the underlying claims that were allegedly frustrated or impeded as a result of the requirement that he condense his legal materials to one box that he could keep in his possession. Thus, Plaintiff's claims are without merit and summary judgment is appropriate.

### 6. Medical Indifference

Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs with regard to his fears of contracting the staph infection. The undersigned finds that Plaintiff fails to show that Defendants were deliberately indifferent to his medical needs. In the case of Estelle v.

Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening,

and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff's claim of medical indifference is without merit. As an initial matter, Plaintiff does not allege that he ever contracted the staph infection. Defendants have presented Plaintiff's entire medical record from SCDC from the date of his admission through September 2008. Curry Aff. at Ex. A. Those records contain no diagnosis of a staph infection. Consequently, the Plaintiff has not presented any evidence to support the objective prong of the Eighth Amendment analysis.

Furthermore, Defendants did not act with deliberate indifference towards Plaintiff's fear of contracting the infection. In fact, Plaintiff was placed in the lockup unit "where he could be housed alone, monitored, and protected from the fears" regarding the staph infection. Jackson Aff. at ¶ 22.

To the extent Plaintiff claims he was later released into the general population, he fails to present competent evidence that he was housed with someone diagnosed as having the staph infection.

Plaintiff has failed to demonstrate that Defendants were deliberately indifferent to a serious medical need or a substantial risk of serious harm in violation of the Eighth Amendment. Thus, Plaintiff's claim in without merit.

### 7. Conspiracy to Transfer Plaintiff to Level 3 Facility

Plaintiff's suggestion that Defendants conspired to have him transferred to a high security institution is frivolous. As both Defendants explain in their affidavits, they do not have any involvement or control over classification issues. Jackson Aff. at ¶¶ 52-54; Quattlebaum Aff. at ¶¶ 38-41. Plaintiff was sent to SCDC after being convicted of throwing bodily fluids on a correctional

officer while at a county detention center. Jackson Aff. at ¶ 8. Moreover, he has pending charges for capital murder. Id. Plaintiff cannot show that inmates with his background are not typically confined in level 3 institutions.

Nevertheless, South Carolina law confers no protected liberty interest upon inmates of the SCDC from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. See, e.g., Keeler v. Pea, 782 F.Supp. 42, 43-44 (D.S.C.1992) ( citing Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)); Vice v. Harvey, 458 F.Supp. 1031, 1034 (D.S.C.1978); and Brown v. Evatt, 322 S.C. 189, 470 S.E.2d 848 (S.C.1996) (holding South Carolina Supreme Court held that neither state statutes creating/defining SCDC's powers nor SCDC's operational classification regulations created a liberty interest in security or custody classifications). See also Hewitt v. Helms, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) ("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.").

In South Carolina, the authority to determine where an inmate is housed is vested in the SCDC. S.C.Code Ann. § 24-3-30(A) ("Notwithstanding any other provision of law, a person convicted of an offense against the State must be in the custody of the Department of Corrections, and the department shall designate the place of confinement where the sentence must be served.") Courts do not have the authority to dictate to the SCDC where an inmate should be housed. Skipper v. South Carolina Dept. of Corrections, 370 S.C. 267, 633 S.E.2d 910, 913 (S.C.App.2006). Accordingly, this claim is without merit and should be dismissed.

### 8. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, assuming arguendo that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals

further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298. Defendants in the present case have not transgressed any "bright lines" of constitutional conduct and, as such, are entitled to qualified immunity.

## V. CONCLUSION

For the reasons set forth above, it is recommended that Plaintiff's Motion for Preliminary Injunction (Document # 39) be denied and Defendants' Motion for Summary Judgment (Document # 40) be granted without prejudice for failure to exhaust administrative remedies or, in the alternative, with prejudice on the merits of Plaintiff's claims. If the district judge accepts this recommendation, the remaining pending motions will be moot.

                                        s/Thomas E. Rogers, III
                                        Thomas E. Rogers, III
                                        United States Magistrate Judge

August 10, 2009
Florence, South Carolina

**The parties are directed to the important notice on the following page.**